UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN CRUZ,

                Petitioner,

– against –

UNITED STATES OF AMERICA,

                Respondent.

**OPINION AND ORDER**

18-cr-779-3 (ER)
22-cv-1456 (ER)

Ramos, D.J.:

Kevin Cruz, proceeding *pro se*, petitions the Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2255 to set aside his federal convictions and sentence. Doc. 101. He claims that his counsel's ineffective assistance at the plea and sentencing stages denied him the level of advocacy guaranteed by the Sixth Amendment. Doc. 124 at 1. For the reasons stated below, the Court DENIES Cruz's petition in part and GRANTS a hearing with respect to Cruz's claim that his attorney did not file a notice of appeal after Cruz instructed him to do so.

I.     BACKGROUND

    A. Underlying Offense Conduct and Procedural History

Kevin Cruz conspired with several others to rob a marijuana dealer at his apartment on February 4, 2018. Doc. 110 at 2; Doc. 2 ¶ 2. During the robbery, Cruz and Richard Jimenez, a co-defendant, brandished firearms. Doc. 110 at 2. Jimenez's gun accidentally fired, striking and tragically killing Jonathan Tuck, who happened to be in the dealer's apartment. *Id.* On October 24, 2018, Cruz was indicted for conspiring to commit Hobbs Act robbery, committing Hobbs Act robbery, and using a firearm during a crime of violence which resulted in the death of Jonathan Tuck. Doc. 2.

On August 19, 2019, Cruz entered into a plea agreement with the Government, agreeing

to plead guilty to a two-count Superseding Information which charged him with conspiracy to commit Hobbs Act robbery, and Hobbs Act robbery.  Plea Agreement at 1–2.  In consideration of Cruz's guilty plea, the Government agreed to move to dismiss any open counts against Cruz.  *Id.* at 2.  The parties agreed that the Sentencing Guidelines for both counts would reflect the fact that Tuck was killed during the robbery.  *Id.*  Additionally, because Cruz accepted responsibility and gave timely notice of his intention to plead guilty, the parties agreed that a three-level reduction for acceptance of responsibility was appropriate.  *Id.* at 2–3.  On those facts, the Plea Agreement determined that the stipulated Guideline Sentence would be the statutorily authorized maximum of 300 months.  *Id.* at 3–4.  In addition, the parties agreed that while each could seek a lower sentence based on the 18 U.S.C. § 3553(a) factors, Cruz would forfeit his right to a direct appeal or a § 2255 motion if his sentence was at or below the stipulated Guidelines.  *Id.* at 4–5.

On December 6, 2019, Cruz pleaded guilty.  Min. Entry dated Dec. 6, 2019; *see also* Doc. 53.  During the plea hearing, the Court informed Cruz that before it could accept his guilty plea, it had to ask a series of questions "to determine, in the first instance, that [he] underst[ood] what [was] going on . . . and the consequences of entering a plea."  Doc. 62 at 2:23–25.  In response to the question of whether he was under the care of a psychiatrist, Cruz indicated that he was under the care of a psychologist who prescribed him certain medications.  *Id.* at 4:7–5:3.  The Court asked whether "the drugs that [he was] taking affect[ed his] ability to think or to remember?"  *Id.* at 5:15–5:17.  Cruz replied "No."  *Id.* at 5:18.  After learning that Cruz had taken medication in the prior twenty four hours, the Court again asked Cruz, "Is your mind clear now?"  *Id.* at 5:19–22.  Cruz replied "Yes."  *Id.* at 5:23.  The Court then questioned Cruz for a third time to determine whether he felt well enough to proceed and Cruz again answered affirmatively.  *Id.* at 5:24–6:1.  Cruz indicated that he had discussed the case and the consequences of entering a plea

2

of guilty with his attorney, George Goltzer, and was satisfied with Goltzer's representation. *Id.* at 6:6–17. Neither the Government nor Goltzer expressed any doubts about Cruz's ability to waive indictment and enter a guilty plea. *Id.* at 6:18–22. "On the basis of Mr. Cruz's responses to [the Court's] questions and . . . his demeanor," the Court concluded that "he is fully competent to waive indictment and enter an informed guilty plea at this time." *Id.* at 6:24–7:2.

Later in the proceedings, the Court explained that the charges Cruz expected to plead guilty to carried a maximum sentence of twenty five years (300 months) and that the Court was required to consider "the nature of the offense that [he] [] committed in determining the appropriate sentence." *Id.* at 13:20–22, 14:9–12, 15:25–6:2, 17:12–19. The Court instructed Cruz that while it was perfectly appropriate for he and Goltzer to have discussed how sentencing might be calculated, "no one [could] give [him] any assurance of what [his] sentence [would] be. *Id.* at 18:7–10.

Following the plea hearing, on March 4, 2020, the Probation office conducted a pre-sentence investigation and prepared a pre-sentence report ("PSR"). Doc. 69. The PSR concluded that Cruz qualified as a career offender and agreed with the plea agreement that the applicable Guidelines range was 300 months, but recommended a downward variance, to 192 months. *Id.* at 22. The PSR noted that "from the very beginning of his life, Cruz faced serious obstacles, namely . . . parents who had their own problems, could not foster a hospitable environment for Cruz, and were unable to address Cruz's serious emotional health issues." *Id.* at 23.

On August 22, 2020, Goltzer filed a lengthy sentencing submission. Doc. 84. In his letter to the Court, Goltzer noted the following:

> The defense . . . agrees with Probation's assessment that a downward variance is appropriate, but we respectfully suggest that the recommended sixteen years is

3

> more than necessary for this truly remorseful, mentally ill young man, a product of hardscrabble Bronx streets traumatized during his formative years by paternal abandonment, maternal neglect and separation, self medicating drug abuse and repeated psychiatric hospitalizations occasioned by bipolar disorder, anxiety and depression- punctuated by suicidal behavior and anger issues impeding his efforts at legitimate employment and education. . . . The defense recommends a ten year sentence, followed by strict supervised release with conditions of mental health treatment, vocational counseling, and drug treatment as deemed necessary by the supervising authorities.

*Id.* at 1.  Goltzer also submitted a report prepared by Kathleen O'Boyle, a mitigation specialist.[1] Doc. 84-1.  The report emphasized Cruz's tragic childhood, abusive domestic settings, and three psychiatric hospitalizations, including one for attempted suicide when he was nine.  *Id.* at 2.  Additionally, according to O'Boyle's report, the PSR failed to include that Cruz suffered physical abuse, "bi-polar illness (not merely emotional health issues), and . . . severe [Attention Deficit Hyperactivity Disorder] and related cognitive and learning problems."  *Id.* at 4.  The report found that "[i]nconsistent treatment and medication combined with substance abuse may have also contributed to Mr. Cruz's stunted emotional growth and maturity."  *Id.* at 6.  When he was not properly treating his conditions, "it was like Mr. Cruz's emotional maturity was on pause, which resulted in him attaining a chronological age of 22 years, with the maturity of say, a 14 year old."  *Id*.  However, while "Cruz [was] . . . initially hindered by cognitive, mental health and emotional problems . . . he ha[d] progressed . . . to a thoughtful and remorseful 25 year old young man, ready to accept punishment for his crime . . . ."  *Id.* at 3.

In contrast, in its sentencing letter dated September 9, 2020, the Government argued that a 300 months sentence would be appropriate, reasoning that something as tragic as Tuck's death needed to be reflected in a "just punishment for the offense."  Doc. 87 at 4.

---

[1] Kathleen O'Boyle is a Sentencing and Mitigation Specialist and a former U.S. Probation and Pretrial Services Officer in the Southern and Eastern Districts of New York.  Doc. 84-1 at 1.

4

Cruz appeared for sentencing on September 25, 2020.  Min. Entry dated September 25, 2020.  When it was Goltzer's turn to speak on behalf of Cruz, he began by saying the following:

> Boy, ha[s the Government] got it wrong.  Probation almost got it right when they recommended a substantial variance down from 30 to 16 years.  We're requesting 10 for this young man who's had a terrible, terrible life, whose criminal history is not nearly as significant as the government describes it, whose mental health issues and childhood contributed to the problems that he suffered.

Doc. 91 at 7:21–8:2.  Goltzer stressed that Cruz was neither the architect of the robbery nor the one responsible for Tuck's death and therefore the Government's suggestion that Cruz's action "requires the maximum sentence without reference to the more than substantial mitigation is quite simply inappropriate . . . ." *Id.* at 8:6–25.  Goltzer highlighted the constant mental health challenges that Cruz faced, *id.* at 10:4–14, and concluded that Cruz "knows he has to do a substantial amount of prison time, and we think the ten years we're requesting is a very substantial amount of time," *id.* 12:10–12.  The Court then imposed a sentence of 60 months on the first charge and 180 months on the second charge, to be served concurrently, a total of 15 years, followed by three years of supervised release on each count.  *Id.* at 18:5–9.  As the Court explained, the sentence was below the stipulated Guidelines range, thereby limiting Cruz's ability to appeal the sentence imposed.  *Id.* at 19:22–20:1.  For that reason, the Court directed Goltzer to "promptly and thoroughly discuss with Mr. Cruz the effect of the plea agreement on his appellate rights." *Id.* at 20:2–4.  Goltzer stated that Cruz understood that per the Plea Agreement, he forfeited his right to appeal based on the sentence imposed.  *Id.* at 20:5–7.

Approximately eight months later, on June 11, 2021, Cruz filed the instant petition.  Doc. 101.  The Court ordered the Government to respond, Doc. 102, and the Government filed its Memorandum in Opposition on September 17, 2021, Doc. 110.  The Government's memorandum included a declaration by Goltzer, wherein he stated that at no time during his "lengthy

representation of Mr. Cruz did [he] have reason to believe that [Cruz] was incompetent to proceed." Attorney's Supporting Decl., Doc. 110-1, ¶ 3. According to Goltzer, Cruz appeared "to be able to comprehend the nature of the charges against him, [and] relate factual matters . . . , assist counsel in his defense, and participate intelligently in making critical decisions about his case, including whether to plead guilty or stand trial." *Id.* On January 6, 2022, Cruz submitted a motion to amend his § 2255 motion, asserting additional information to support his petition. *See* Doc. 120. Cruz thereafter filed the Amended Motion on February 22, 2022. Doc. 124.

In the current § 2255 petition, Cruz argues that he was provided ineffective assistance of counsel. *Id.* First, Cruz alleges that Goltzer failed to request a psychological examination, which either could have shown that he was incompetent to stand trial or that his diminished capacity entitled him to a downward departure at sentencing. *Id.* at 10. Second, Cruz contends that Goltzer misrepresented the role Jonathan Tuck's death would play in his sentence and therefore, when Cruz entered his guilty plea, he did so unknowingly and involuntarily. *Id.* at 12. Third, Cruz argues that he was denied effective assistance of counsel during sentencing because Goltzer failed to make a specific request for a downward departure or a downward variance. *Id.* at 13. Finally, Cruz claims that his counsel was ineffective for failing to discuss appeal options with him following sentencing. *Id.* at 15.

## II.   APPLICABLE LAW

### A.   Habeas Corpus § 2255 Standard

Under 28 U.S.C. § 2255, a prisoner who was sentenced by a federal court can petition the sentencing court to be released if (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is subject to collateral attack. 28 U.S.C. § 2255(a). Challenges on a Section 2255 motion "conflict with

'society's strong interest in the finality of criminal convictions,' so defendants are subject to a higher bar 'to upset a conviction on a collateral, as opposed to direct, attack.'" *Sidney Bright v. United States*, No. 14 Civ. 968 (WHP), 2018 WL 5847103, at *2 (S.D.N.Y. Nov. 8, 2018) (quoting *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010)). Therefore, in cases not involving a constitutional violation or a lack of jurisdiction, "the Supreme Court has long held that . . . relief [through a collateral attack] is available only when the claimed error constitutes a 'fundamental defect which inherently results in a *complete* miscarriage of justice' and presents '*exceptional circumstances* when the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Nnebe v. United States*, 534 F.3d 87, 90 (2d Cir. 2008) (emphasis added) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

For *pro se* petitions, the submissions are "held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972). Courts construe the petitioner's submissions "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see also Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim requires a criminal defendant to demonstrate (1) that his counsel's performance "fell below an objective standard of reasonableness," measured in accordance with "prevailing professional norms," such that he was "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that counsel's "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88

(1984). When considering a claim for ineffective counsel, courts must endeavor to "eliminate the distorting effects of hindsight" and to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The prejudice prong of the *Strickland* test requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### III. DISCUSSION

Cruz challenges his conviction and sentencing on four grounds. The Court takes each in turn.

#### A. Counsel's Failure to Request a Psychological Examination

Cruz first argues that he was denied effective assistance of counsel after Goltzer failed to order a psychological exam in spite of the fact that Goltzer's "own mitigation expert observed [that Cruz] had the mental capacity well below his actual age." Doc. 124 at 10. Cruz argues that "[a]n examination . . . could have proven either that [he] did not have the capacity to stand trial or that a diminished capacity sentencing departure was appropriate." *Id.* The Court disagrees.

A defendant is unfit to stand trial if a "mental condition[] impairs [his] cognitive functioning to the point that [he] is unable to consult with [his] lawyer or understand the proceedings." *Perez v. United States*, No. 14 Civ. 3995 (VSB), 2017 WL 1628902, at *5 (S.D.N.Y. May 1, 2017). Though a defendant may suffer from mental health conditions, "[t]here is 'no *per se* rule that requires trial attorneys to seek out an expert'" for a psychological evaluation. *Starkes v. United States*, No. 20 Civ. 265 (LGS), 2023 WL 355641, at *3 (S.D.N.Y. Jan. 23, 2023) (quoting *Gersten v. Senkowski*, 426 F.3d 588, 609 (2d Cir. 2005)). "It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial." *United States v. Nichols*, 56 F.3d 403, 412 (2d Cir. 1995) (quoting *United States v. Vamos*,

8

797 F.2d 1146, 1150 (2d Cir. 1986)).  Furthermore, the Second Circuit has "frequently reiterated that the district court's determination of competency based on its direct observations of the defendant is entitled to deference."  *United States v. Ioulevitch*, 508 F. App'x 73, 75 (2d Cir. 2013) (citation omitted).

The Court first considers the "counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citing *Strickland*, 466 U.S. at 689).  Goltzer states that "at all times [he] interacted with [Cruz]" Cruz appeared "to be able to comprehend the nature of the charges against him, [and] relate factual matters, assist counsel in his defense, and participate intelligently in making critical decisions about his case, including whether to plead guilty or stand trial."  Attorney's Supporting Decl. ¶ 3.  Goltzer's assertions are persuasive evidence of competence.  *Vamos*, 797 F.2d at 1150 (holding that "since incompetency involves an inability to assist in the preparation of a defense or . . . to comprehend the nature of the proceedings, failure by trial counsel to indicate the presence of such difficulties provides substantial evidence of the defendant's competence").

In addition, on three separate occasions during his change-of-plea hearing, Cruz acknowledged that he understood the nature of the proceedings and was fully aware of his surroundings.  Doc. 62 at 2:20–7:2; *see also Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013) ("[I]n a § 2255 motion . . . the court must . . . take into account admissions made by the defendant at his plea hearing, for '[s]olemn declarations in open court carry a strong presumption of verity.'") (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  At that hearing, Goltzer and the Government confirmed they had no concerns about Cruz's competence.  *Id.* at 6:18–22.  The Court then determined that Cruz was competent based on his statements and

demeanor. *Id.* at 6:24–7:2. Although Cruz now argues that an evaluation *could* have proven he was incompetent, critically, he has not offered *any* evidence to undermine the statements he made at the plea proceedings. *See Blackledge*, 431 U.S. at 73–74 (holding that a party cannot refute prior representations at a plea hearing with subsequent conclusory statements).

Instead, Cruz supports his claims by referring to the mitigation report filed *after* he entered a guilty plea. The report described Cruz's tragic childhood, abusive domestic settings, and attempted suicide. Doc. 84-1 at 2. The report "found him to have numerous mental deficiencies that impair his ability to comprehend." Doc. 124 at 11. But O'Boyle's report also supported Goltzer's determination that a mental evaluation was not necessary. The mitigation report recognized that while "Cruz . . . [was] initially hindered by cognitive, mental health and emotional problems . . . he . . . progressed from an immature 22 year old with the maturity level of an adolescent, to a thoughtful and remorseful 25 year old young man, ready to accept punishment for his crime." Doc. 84-1 at 3. Per the report, Cruz "benefited from his time in detention [and the] consistent medication regimen and allowed him to focus on self-reflection which has helped him mature emotionally." *Id.* at 10. The PSR and mitigation report acknowledged Cruz's mental challenges, yet neither raised doubts about Cruz's competence. *See Vamos*, 797 F.2d at 1151 (concluding that a report does not raise questions about a defendant's competency where it does not link the defendant's mental illness to his competency).

The Court finds that on this record, Goltzer's decision not to seek a mental evaluation was reasonable. *See Davila v. United States*, No. 07 Civ. 1320 (JBW), 2008 WL 906691 at *12 (E.D.N.Y. Mar. 31, 2008) (holding that where there is "no evidence to suggest that petitioner was not competent to proceed . . . counsel was not ineffective for failing to request such an examination.") (citation omitted). Moreover, since Cruz has failed to muster any facts to support

his claim of incompetence at the time of the plea, he also failed to satisfy the prejudice prong of *Strickland*. *Oliver v. United States*, No. 07 Civ. 5921 (DLC), 2008 WL 190487, at *5 (S.D.N.Y. Jan. 22, 2008) (finding no prejudice where a movant failed to provide evidence that he would have conducted himself differently in his criminal proceedings had a mental evaluation been ordered).

### B. Counsel's Advice Regarding the Role of Tuck's Murder at Sentencing

Cruz also claims that Goltzer's assistance was ineffective because he erroneously counseled Cruz that Jonathan Tuck's death would not play a role at sentencing. Doc. 124 at 12. Cruz alleges that the ill-advice influenced his decision and therefore he entered an uninformed and involuntary guilty plea. *Id.* at 13. The Court disagrees.

The issue before the Court "is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (quoting *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992)).

Cruz alleges that despite his expectations, the Government referenced Tuck's death and insisted on a 300-month sentence, 60 months greater than the 240-month sentence given to Jimenez who was directly responsible for Tuck's death.[2] Doc. 124 at 12–13. Therefore, Cruz argues, his decision to plead guilty was not made "knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely circumstances." *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (alteration in original) (quoting *Brady v. United States*, 397 U.S. 742, 749 (1970)); *see also id.*

---

[2] Goltzer's Declaration does not mention any advice he gave Cruz about the role Jonathan Tuck's death would play at sentencing. *See* Doc. 110-1.

The record before the Court conclusively belies Cruz's argument. As the Government notes, Cruz was fully aware that Tuck's death would be used in determining the applicable Guidelines range, and therefore he knowingly entered into a guilty plea. Doc. 128 at 11. Indeed, the Plea Agreement that Cruz signed specifically stated that the applicable sentencing Guidelines accounted for the fact that a victim was killed. Plea Agreement at 2. This did not discourage Cruz from pleading guilty. During the plea proceedings, the Court explained that the charges Cruz expected to plead guilty to carried a maximum sentence of twenty five years (300 months). Doc. 62 at 13:20–22, 14:9–12, 15:25–6:2. Cruz affirmed that he was aware that the Court was required to consider "the nature of the offense that [he] committed in determining the appropriate sentence." *Id.* at 17:12–20. The Court cautioned Cruz that while he and Goltzer were might have discussed how sentence would be calculated, no one could give Cruz assurances. *Id.* at 18:7–10. After being made aware of the uncertainty of the ultimate sentence that could be imposed, Cruz pleaded guilty. *Id.* at 24:2–13.

As noted above, to establish prejudice, a "defendant must show that there is a reasonable probability that were it not for counsel's errors he would not have pled guilty and would have proceeded to trial." *Arteca*, 411 F.3d at 320 (2d Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In *Hill*, the Court held that a petitioner who failed to allege that he would have insisted on pleading guilty if not for his counsel's inaccurate advice "failed to allege the kind of 'prejudice' necessary to satisfy the second half of the *Strickland v. Washington* test." *Hill*, 474 U.S. at 60. Here too, Cruz has neither argued nor hinted that he would have proceeded to trial if not for Goltzer's advice. Furthermore, by entering a guilty plea, Cruz limited his potential prison sentence to a maximum of twenty five years (300 months), whereas, if he had proceeded to trial, he was exposed to a potential life sentence. Accordingly, Cruz cannot allege prejudice. *Gist v.*

12

*United States*, No. 19 Civ. 5095 (GHW), 2021 WL 3774289, at *28 (S.D.N.Y. Aug. 24, 2021) (By deriving "substantial benefit resulting from his guilty plea, petitioner has failed to demonstrate that he was prejudiced by his counsel's advice to plead guilty.") (quoting *Marston v. United States*, No. 17 Cr. 298 (JGK), 2020 WL 6701014, at *5 (S.D.N.Y. Nov. 13, 2020)).

### C. Counsel's Failure to Seek Downward Variance a Sentencing

Next, Cruz asserts that he was denied effective assistance of counsel because "at no point did Goltzer make a specific request for a downward departure or variance on Cruz's behalf." Doc. 124 at 13. Cruz posits that Goltzer merely presented a "global argument that a 300-month custodial sentence did not serve the ends of justice." *Id.* Cruz believes that if Goltzer requested a psychological evaluation, "it would have most assuredly led to Goltzer being able to present a meritorious departure/variance argument based upon diminished capacity." *Id.* at 13–14.

Again, the record belies Cruz's contentions. Goltzer's sentencing submission includes arguments and a mitigation report, which specifically requested a downward variance. Doc. 84. For example, in his submission to the Court, Goltzer argued that contrary to the Government's recommendations of twenty five years, the "ten years [the defense] suggest[s] is a serious and severe sentence, and sufficient under the very sad and unusual factual template addressed in the presentence report and this submission." *Id.* at 1. In support of his arguments, Goltzer commissioned a mitigation report that advocated for a ten year sentence. Doc. 84-1 at 1. During the sentencing proceedings, Goltzer vehemently protested the Government's sentencing recommendation and its description of Cruz's involvement in the death of Jonathan Tuck. Doc. 91 at 7–12. Specifically, Goltzer argued that while the parole officer "almost got it right when they recommended a substantial variance down from 30 to 16 years . . . [the defense was]

requesting 10 [years] for this young man who's had a terrible, terrible life."[3] *Id.* at 7:21–24. The record makes clear that Goltzer specifically and effectively advocated for a sentence below the 300-month applicable Guidelines range. Doc. 91 at 15:25–16:19; 17:9–14. Accordingly, Cruz's claim regarding Goltzer's assistance at sentencing is also denied.

### D. Counsel's Advice regarding Appellate Rights

In his final argument, Cruz alleges that Goltzer refused his request to appeal his sentence. Doc. 124 at 15. Cruz alleges that he asked Goltzer to appeal because his sentence was distorted by the consideration of Tuck's murder. *Id.* Cruz asserts that Goltzer stated that he could not appeal because the Plea Agreement did not permit appeals. *Id.*

The Supreme Court has established that a lawyer who disregards a client's desire to appeal will presumptively be found ineffective, even when faced with an enforceable waiver. *Roe v. Flores–Ortega*, 528 U.S. 470, 484–485 (2000). The Second Circuit has held that when a defendant directs his lawyer to appeal, even if the lawyer believes the requested appeal would be frivolous, the attorney is still bound to file the notice of appeal and submit an *Anders* brief. *Campusano v. United States*, 442 F.3d 770, 771–772 (2d Cir. 2006). "When a defendant claims that his attorney failed to file a requested notice of appeal, the following proceedings will ensue: (1) a hearing before the district court pursuant to § 2255 to determine whether the client requested the appeal; (2) an appeal from the district court's ruling, should either party seek one; and (3) a direct appeal if the defendant did in fact request that a notice of appeal be filed." *Id.* at 776.

The Government concedes that it "would be appropriate to conduct a hearing for the

---

[3] Cruz concedes that Goltzer raised 18 U.S.C. § 3553(a) factors in support of more favorable sentence. Doc. 124 at 13.

limited purpose of determining whether Cruz in fact requested his attorney to appeal." Doc. 128 at 15. To be sure, on the facts of this case, if Goltzer advised Cruz that the Plea Agreement barred any sentencing appeal of a sentence below the stipulated Guidelines range, the advice was correct because Cruz was sentenced *below* the stipulated Guidelines range. *See* Plea Agreement at 4–5. However, the Court recognizes that if we "require [Cruz] to make a showing [that his appeal raises non-frivolous issues] now, we will undermine . . . the principles of the Sixth Amendment by allowing attorneys who believe their clients' appeals to be frivolous simply to ignore the clients' requests to appeal." *Campusano*, 442 F.3d at 776. Accordingly, the Court will hold a *Campusano* hearing.

## IV.   CONCLUSION

For the reasons stated above, the Court DENIES Cruz's petition in part and GRANTS a *Campusano* hearing to address Cruz's claim regarding his counsel's failure to file an appeal on his behalf. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 101, 120, 121, 124, 129, and to terminate the motion in the related action, Case Number 22-cv-1456, Doc. 1.

It is SO ORDERED.

Dated:   May 5, 2023
         New York, New York

                                                        _____
                                                        Edgardo Ramos, U.S.D.J.